We are ready when you are, Ms. Mack. Good morning. On behalf of the Blackfeet Tribe, I want to thank you for the opportunity to present today. May it please the Court. Blackfeet Housing filed its claim in the Court of Claims on January 2, 2012. They premised their jurisdictions on the Indent Tucker Act and the Tucker Act, and long-standing constitutional statutory and federal common laws, and the Native American Housing and Self-Determination Act. Why wasn't that filing too late? Because they knew of the problem with these houses. In fact, there were defendants in a lawsuit concerning them. Correct, Your Honor. Why they didn't file earlier, Your Honor, I think that they really did think that there would be a remedy at some point prior to filing the lawsuit. And when they were a defendant in the Marsu case, they were in the federal district court, and so I think in order to file a claim, they would have had to go to the Court of Claims, because that is the court where they were able to obtain money damages. The fact is they knew a reason to know of the problem, and they didn't meet the date. So whatever their reasons were, they didn't meet the date. Well, Your Honor, one of the things that we do address in our case is the question of whether there is a trust obligation to be guessed. Because I think before we even get to the statute of limitations issue, we have to address the question of whether there is a trust obligation or not. Well, doesn't the Marceau case, isn't that relevant to whether there was a trust relationship? Well, I think, Your Honor, in that case, the difference is that that wasn't the tribal government. That wasn't the tribe that was actually arguing that case. They were defending it. But didn't it involve the same statute under which you're alleging that a trust relationship was created? What I thought was really interesting about that case, Your Honor, is they argue the control issue. And they look at the Mitchell cases, Mitchell I and Mitchell II, and they argue control. But the issue that was not addressed in that case, I mean, one, we have different parties. We have the Blackfeet tribe involved in this case. And second, the issue is what does that act actually say? Is it a substantive law that establishes a trust obligation on behalf of the federal government? And then if they meet that threshold requirement, is there, I mean, can we have a breach that can be addressed in money damages? And we think, Your Honor, that the NAHASDA, the Native American Housing Self-Determination Act, was not specifically argued in the Marceau case as being that substantive statute. Okay, but I'm not sure where we all end up with regards to the statute of limitations problem. Is it your argument that if it's a trust, then it had to have been explicitly repudiated, and it wasn't, and that's how you avoid the statute of limitations problem? Yes, your argument, that's exactly what we have argued. But as the judge below pointed out, sort of calling it, I think, your logical contortions, that if we were to agree with you, then there's a rightness problem and there's no current case in controversy, so you're out of here on that basis. Well, I guess the question would be if the common law principles of trust apply, then the question would be when, I mean, as far as repudiating, the federal government would have to say, we're not responsible, we're not going to… And your argument would be that they haven't yet repudiated. They haven't yet repudiated. So where's the case in controversy? No, our position is that they actually have a trust responsibility and they have breached that trust responsibility, and we're saying that there isn't a statute of limitations issue. But you're saying then that they have repudiated. If they've breached, they've repudiated. Well, they have breached, right. And this question becomes, so when does that breach occur? Does the breach occur when they actually step forward and say, we don't have a responsibility, or does the breach occur when they do not follow through with their obligation? And when did that breach occur? Well, the breach occurred – it's continuing to occur. That's our position. That Blackfeet housing and the Blackfeet tribal people live in these homes that are unsanitary, unhealthy, and the law requires them to address that issue, and they haven't. And so Blackfeet housing is placed in a position where they have no choice but to file a lawsuit to have it addressed. Ms. Manning, you said earlier, I think in response to questioning with Judge Lurie, that we don't need to look at the statute of limitations issue, but we should go directly to whether there's a trust relationship, correct? Correct. But why is that? Because the Supreme Court has said that the statute of limitations is jurisdictional in the Court of Federal Claims, 2501, it's jurisdictional. Right. And don't we have to look at that first? And isn't that the door opener or the door closer, so to speak, to the suit? Well, Your Honor, I think that – well, our position is that if we have a statute of limitations issue, then the question would be when does that – when does it accrue? When does it break? And the federal government has argued that there's several different scenarios that can be looked at. One is these homes were built between 77 and 80. Well, the court fixed on the 2002 date when the suit was filed in California. I guess in Montana it was, wherever it was filed. And that – they're saying that is the point at which the tribe, the association, whoever, should have known of its cause of action. Right. Well, Your Honor, our position is that there's this trust obligation, though, that has to be addressed by the court first. Because if this trust – if the trust obligation has to exist – I mean, exist, then we go to the statute of limitations issue. If there's no trust, there's no issue. I mean, if there's no trust obligation. And our position is – Doesn't the statute of limitations apply any time you enter the Court of Federal Claims under the Tucker Act? Yes. Isn't that a threshold question? Whatever your basis is for jurisdiction? Right. So you can't waive the statute of limitations. No. But the question would become when does it accrue? When does the statute of limitations start to accrue? And our position is that the statute of limitations doesn't start to accrue at this point because the federal government hasn't truly indicated to the Blackfeet tribe that they have repudiated their trust obligation. They have simply indicated in the record that the Blackfeet tribe has monies available under NAJASDA and they can fix the problem. Well, the problem with that is the monies available under that act that they've been receiving so far does not – there's not enough money. If the government hasn't repudiated, then you have an action in the same claims court for breach of trust, right? That's our position, yes. Yeah, but that goes back to the date when you knew that the so-called trust obligations weren't being met. And you knew that as of the date of the earlier case where you were defendants and the same issue was being raised. Right, the same issue – well, a similar issue was being raised by some home people that were living in the unit. But our position is that for the federal relationship that is created here is between the Blackfeet tribe and the federal government. And the Marsu case, the Blackfeet tribe was not involved in the sense that they were defending. They were defending the case, but they were not presenting a case against the federal government. And essentially – At the time of their knowledge that there were defects and problems in the housing. And they truly knew it when they were defending a lawsuit relating to it. Right, but with most common law trust situations, though, that trust exists and continues to exist, even if there's knowledge of a situation. So that trust is continuing today, even though the Marsu case was filed in 2002. You're not alleging a common law trust, are you? Well, what I'm saying is that if the trust – my reading of the case law is that if the trust exists, if NAHASA creates – if NAHASA is substantive law, as you know in the brief, there's a question about whether it's substantive law because of where the obligation is set forth. It's in the finding section and then mainly in the finding section, and then it goes to section 201, Title II, section 201, and sets forth the obligation again. So what I understand from reading Hickory and reading the Shoshone case is that if you can establish a trust obligation, then the common law rules of trust apply. And that's where the courts have looked at and said common law trusts have to be repudiated before the statute of limitations begins to run. But you said, Ms. Matt, that there's been a breach here, correct? Correct. What was the breach? The breach is the failure to ensure that these homes are safe and sanitary and healthy. And you're saying that that breach occurred at a given point in the past and is still continuing? Is that your contention? Yes, Your Honor, continuing. When did it first, in your view, when did it first occur? You said it's occurred and it's continuing. When did it first occur and how is it continuing today? Well, Your Honor, I think these are wooden foundations. So you're talking about wooden foundations that exist in an area in north central Montana where the weather is extremely cold. So I think this has been a problem for a number of years. So the breach first occurred when the houses were built? Well, it's possible that that breach occurred, you know, back that far, yeah. And why is it, okay, that's the first part. Why is it continuing still today? Because the homes have continued to deteriorate. They're actually in worse condition today than they were, you know, when the Marsu case was filed. And these homes are not safe, they're not sanitary, and they're unhealthy. So if the homes still exist in that condition, and if the federal government has a trust obligation, then our position is that the hospice creates that trust obligation. And your view is that that trust obligation has no bounds in terms of the amount of money that it might cost to do it? I'm sorry, Your Honor? It has no bounds in terms of the amount of money. I mean, as this case ensued initially, it was a question of cost and the amount of money appropriated for this venture that resulted in the homes not being constructed in the way which one might have liked. So is your view that this trust obligation is boundless in terms of the amount of money it might cost? No, Your Honor, I don't think it's boundless. The question is, the Blackfeet tribe has had studies done on what it would cost to fix these homes, and the repair costs exceed the value of the homes, so the damages would be the replacement of the homes. So it wouldn't be boundless, it would be a set amount. But a replacement of the homes with presumably concrete and not wood, which was presumably the problem that instigated this, right? Right. Would you like to save the remainder of your time? Yes, thank you. For the government, perhaps you can help me with the pronunciation of your name? How do we pronounce your name? Chris Wickey. My name is Peter Chris Wickey. At the council table with me is Gary Nemnick from the Department of Housing and Urban Development. Please proceed. May it please the Court. The Court of Federal Claims has correctly decided that Blackfeet Housing's claim accrued no later than 2002, and is therefore barred by the six-year statute of limitations at issue in this case. A claim first accrues when all events that fix alleged liability have occurred, and they are neither concealed nor inherently unknowable. For an alleged breach of trust, claim accrual occurs when the United States takes actions that are allegedly inconsistent with its fiduciary obligations, and that those actions are neither concealed nor inherently unknowable. Well, your friend on the other side suggests that there's sort of an ongoing, continuing violation here. Why is that wrong? Your Honor, as my brief points out, I believe there are three reasons why this is incorrect. First of all, I don't believe it was raised below in any of the briefs. For that reason, I think it's waived. Second of all, I believe that the letters plainly establish at the very latest when the United States took action that could be arguably conceived as inconsistent with its alleged fiduciary obligations. Finally, I believe that it is this Court's precedent that they must allege individual and discrete actions that each are a violation of a statute, rather than a single event with ongoing or continuing wrongs. Well, let's assume hypothetically that they were right about the trust, and that the government somehow had a trust obligation to provide them continuously with a safe and healthy home structure. Yes, Your Honor. Why isn't that kind of of the nature of a continuing violation? Your Honor, because we think that at some point, and that point is no later than 2002, the United States repudiated the trust. It took actions that were allegedly inconsistent with that duty, and those actions are when the claim should accrue. Furthermore, Seth, I understand the continuing claim theory is sort of a limited theory, and we have a statutory prescription for the statute of limitations. Congress has said that a claim first accrues when the events have occurred within six years. Can I just take you to the trust issue, leaving aside for a moment the statute of limitations? It seems to me that these findings that are relied on here are pretty specific, are they not? I mean, it seems like there's an obligation to provide affordable homes and safe and healthy environments, which is described as an essential element of the special role of the United States. Your Honor, so the findings that the language you're pointing to, first of all, I do believe that it specifically says that the United States has an obligation to work with the tribes to improve their housing conditions and socioeconomic status. Second of all, if you continue on to the last two findings, findings six and seven of that claim statute, you'll note that the emphasis of this act is on self-determination. This act is basically just a means of providing block grants to the tribes in order for them to deal and figure out how to deal with their own housing issues. Well, I don't know, six is the federal government shall work not only to provide housing assistance, but also to the extent practical to assist in the development of private housing finance mechanisms. I mean, that's pretty detailed in terms of the government's obligation. I understand seven says you're supposed to respect the right of self-determination, et cetera, but six seems pretty specific in terms of the obligation on the government. Furthermore, if you look to the rest of the statute as was the case in the first United States v. Mitchell case that the Supreme Court heard, there are other statutory provisions which explain who bears the responsibility for maintaining the homes and things of that nature, which is, I believe, the issue in this case. And, for example, section 4133 of this statute specifically provides that it's the tribe's obligation, or rather the recipient, whether that be the tribal housing authority or the tribe itself, of the funds to maintain and modernize homes built under earlier statutes. Is it your view that even if there was a trust established, the statute of limitations had run? Yes, Your Honor. We do believe that the statute of limitations was approved no later than 2002 after they had received a complaint about the same sort of issue, and they obviously had knowledge of all the underlying facts of this case. So you would say that we have to address the statute of limitations issue first, and if we determine that the suit was not filed within the limitations period, then that's the end of the case? Your Honor, I honestly actually believe that you may address them in either order, whichever the court prefers. My understanding is that both of these issues before this court are jurisdictional, and that the court, when it wants to address statute of limitations issues first, it may assume duties for the sake of analyzing the statute of limitations issue. But, like I said, I do believe both are jurisdictional, and I don't think that you necessarily have to put one before the other, and I think that we have a strong case on both. But why is the trust issue jurisdictional? Wouldn't that be, say, your stated claim? So the trust issue is jurisdictional because the Indian Tucker Act is the basis for the waiver of sovereign immunity. As the Supreme Court has held routinely, you have to establish the duty and the fact that the duty is money mandating in order to access and in order to hail the government into court, and therefore it's jurisdictional and may probably consider a 12D1 motion. But you're saying we could take the position, we could take the position, we will assume for purposes of deciding this case that there was a trust relationship as sanctioned in Mitchell 2 and other cases, but the statute of limitations wasn't met. Yes, Your Honor. I do believe that the district court was correct in both of its holding, and I do believe that if you would like to, you are more than welcome to look at the statute of limitations first by assuming duties exist. Are there any further questions from the court? There do not appear to be, so thank you, Mr. Blinken. We'll hear rebuttal from Ms. Mack if she chooses to make rebuttal comments. You have two minutes and 40 seconds. Okay. On the point of the HOSDA being a substantive statute, the government has indicated that it is not a substantive statute because it's a self-determination act, but reading that statute, reading the HOSDA, throughout it, throughout the act is reference to the role of the Secretary of Housing and Urban Development, and they are not left out of the picture at all. In fact, they play a primary role in ensuring that Blackfeet Housing receives funding and how they actually carry out their activities once they receive that funding. The second thing is the act actually gives Blackfeet Housing money for maintenance, but the units that we're talking about are past the point of maintenance. Maintaining the units is ensuring that certain things have to be addressed as far as maybe replacing a toilet, replacing a refrigerator, doing things of that nature. But we're talking about having to replace the structure, which is not maintenance. So, I think that's all I have. Thank you, Ms. Mack. We'll take the case on revising.